IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————————————

No. 13-10922-AA

———————————————————————

PATRICIA HUGHES, MOTHER AND ADMINISTRATRIX
OF THE ESTATE OF ALLENE J. HUGHES

Plaintiff-Appellant,

v.

KIA MOTORS CORPORATION AND KIA MOTORS AMERICA, INC.

Defendants-Appellees.

———————————————————————

On Appeal From The United States District Court
For The Northern District of Georgia
Civil Action No. 1:11-cv-02733-JOF (Forrester, J.)

———————————————————————

**BRIEF OF DEFENDANTS-APPELLEES**

———————————————————————


Andrew T. Bayman
Franklin P. Brannen, Jr.
Anneke J. Shepard

**KING & SPALDING LLP**
1180 Peachtree Street
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

No. 13-10922-AA – Patricia Hughes v. Kia Motors Corporation

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and

Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, undersigned counsel for

Defendants-Appellees certify that the Certificate of Interested Persons and

Corporate Disclosure Statement filed by Appellant is complete and correct with the

following addition:

      Hyundai Motor Company (Interested Party)

      Defendant-Appellee Kia Motors America, Inc. is a wholly-owned subsidiary

of Defendant-Appellee Kia Motors Corporation.  Hyundai Motor Company is a

company that owns 10% or more of Defendant-Appellee Kia Motors Corporation's

stock.

## STATEMENT REGARDING ORAL ARGUMENT

Defendants do not believe oral argument is necessary to resolve the legal issues presented in this appeal.  The District Court's Order granting Defendants' Motion for Summary Judgment and Motion to Exclude Certain Opinion Testimony of Joseph L. Burton has authoritatively decided the issues raised by Plaintiff's appeal, (*see* Fed. R. App. P. 34(a)(2)(B)), and the parties' briefs and the record before this Court adequately present the facts and legal arguments.  Oral argument will not, therefore, enhance the Court's decision-making process.  *See* Fed. R. App. P. 34(a)(2)(C).

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT....................................................................C1

STATEMENT REGARDING ORAL ARGUMENT ...........................................i

TABLE OF CONTENTS.......................................................................................ii

TABLE OF AUTHORITIES ..............................................................................iv

TABLE OF RECORD REFERENCES IN THE BRIEF.......................................vi

STATEMENT OF ISSUES ...............................................................................1

STATEMENT OF THE CASE...........................................................................2

      I.     NATURE OF THE CASE.........................................................2

      II.    STATEMENT OF THE FACTS.........................................................4

      III.   STANDARDS OF REVIEW ...........................................................8

 SUMMARY OF THE ARGUMENT ..................................................................10

ARGUMENT AND CITATIONS OF AUTHORITY ...........................................12

I.     The District Court Properly Excluded the Injury Causation Opinions of

      Dr. Joseph Burton ........................................................................12

      A.    Dr. Burton's Testimony Was Properly Excluded Because He Failed to

             Reliably Employ His Own Methodology............................................12

      B.    Dr. Burton's Testimony Was Properly Excluded Because He Failed to

             Conduct a Proper Differential Etiology ............................................16

II.    The Grant of Summary Judgment Was Proper Because Plaintiff Cannot

       Establish Causation.........................................................................................20

CONCLUSION ......................................................................................................25

CERTIFICATE OF COMPLIANCE.......................................................................26

CERTIFICATE OF SERVICE ...............................................................................27

# TABLE OF AUTHORITIES

## Cases

*Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).......... 8,9,10

*Bara v. Clarksville Memorial Hospital Sys., Inc.,* 104 S.W.3d 1

   (Tenn. Ct. App. 2002) ........................................................................20

*Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230

   (6th Cir. 1980)................................................................................18

*Christie v. Mazda Motor of America*, 2006 WL 2128897

   (E.D. Tenn. 2006) ...........................................................................19

*\*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

   113 S. Ct. 2786 (1993)......................................................................2

*Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516, 522-23 (Tenn. 1973) .................18

*Fane v. Edenfield*, 945 F.2d 1514, 1516 (11th Cir. 1991),

   *aff'd*, 507 U.S. 761, 113 S. Ct. 1792 (1993) ......................................9

*General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512 (1997)........................8

*\*Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1197 (11th Cir. 2010) ...................19

*\*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,

   119 S. Ct. 399 (1999).................................................................. 2, 9

*Lloyd v. Prudential Securities, Inc.*, 438 S.E.2d 703, 704

(Ga. Ct. App. 1993)...........................................................................................11

*Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897

(Tenn. Ct. App. 2001) ......................................................................................22

*Morgan v. Mar-Bel, Inc.*, 614 F. Supp. 438 (N.D. Ga. 1985) ...............................11

*Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540 (6th Cir. 2004)...........................19

*\*Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d  686, 705 (Tenn. 2011)..................20

*O'Bryan v. Volkswagen of Am.*, 39 F.3d 1182 (6th Cir. 1994)..............................20

*Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998)...............................9

*Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548 (11th Cir. 1995) ....................8

## **Statutes/Rules**

Fed. R. Civ. P. 56(c).................................................................................................9

Tenn. Code Ann. § 29-28-108 ..............................................................................24

## <u>TABLE OF RECORD REFERENCES IN THE BRIEF</u>

| **<u>Brief Page #</u>** | | **<u>Docket #</u>** |
|---|---|---|
| 3 | Exhibit 7 to Deposition of R. Cunningham | 68-8 |
| 3,5,6 | Deposition of R. Cunningham | 68 |
| 4 | Order Granting Defendants' Motions | 98 |
| 4,5 | Plaintiff's Complaint for Damages | 64-1 |
| 4,5,23 | Expert Report of J. Burton | 86-16 |
| 5 | Expert Report of B. Bloch | 86-14 |
| 6,7,13-17,19, 21-24 | Deposition of J Burton | 67 |
| 7 | Supplemental Report of J Burton | 72 |
| 7 | Additions to Testimony of J Burton | 71 |
| 7 | Defendants' Motion to Strike Suppl. Report | 89 |
| 7 | Defendants' Motion to Strike Additions | 90 |

## <u>STATEMENT OF THE ISSUES</u>

(1) Whether the District Court abused its discretion by excluding the injury

causation opinions of Plaintiff's expert witness, Joseph Burton, because he

failed to employ a reliable methodology.

(2) Whether the District Court properly granted summary judgment to the

Defendants because Plaintiff failed to demonstrate that Ms. Hughes' fatal brain

injury was caused by any alleged defect in the subject Kia Optima.

## STATEMENT OF THE CASE

### I.    NATURE OF THE CASE.

This case exemplifies the reason that the Supreme Court of the United States adopted its expert witness rule in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).  Under that decision, federal courts must ensure that an expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 399 (1999). Put simply, the testimony of an expert witness should embrace – and be supported by – science and logic.  But here, plaintiff's expert witnesses tried to look the other way.

When analyzing an accident in which a fully-loaded Mack truck slammed into the side of a Kia Optima, plaintiff's expert witnesses – for some odd reason – ignored the forces acting in the direction of travel of the Mack truck and focused instead on the longitudinal (forward-to-rear) deceleration of the Kia Optima.





2

(Fig. 1 is a diagram created by Ralph Cunningham, plaintiff's accident reconstruction expert, showing the angle of impact between the Mack truck and the Kia and the damage caused to the Kia by the impact. *See* Doc. No. 68-8, R. Cunningham Dep., Exh. 7. Labels have been added to identify the vehicles. Fig. 2 is a demonstrative based on Mr. Cunningham's testimony. *See* Doc. No. 68 at 67:11-15.) But simple trigonometry allows the ignored value to be calculated, and plaintiff's accident reconstruction expert Ralph Cunningham made this calculation during his deposition. (*Id.* at 69:8-70:7).

While plaintiff tries to label this analysis as a "hypothetical," it is anything but hypothetical. It is basic physics and trigonometry using a simple high school math formula provided by plaintiff's own expert – the exact type of methodology that Supreme Court requires experts to employ before providing testimony in federal courts.

But the Kia Defendants did not challenge the methodology of Mr. Cunningham because the formula he used to calculate the lateral delta-v is not in dispute. Instead, the Kia Defendants challenged the methodology of Plaintiff's injury causation expert Dr. Joseph Burton who did not consider this value when he first formulated his opinions in this matter. The District Court properly excluded Dr. Burton's injury causation testimony because Dr. Burton did not follow his own

methodology for assessing injury causation.   When the trial court excluded Dr.

Burton's opinions, plaintiff had no causation evidence to support her claims, and

the trial court properly granted summary judgment for the Defendants.

## II.    STATEMENT OF THE FACTS.

On May 2, 2005 at approximately 2:45 a.m., after visiting a night club and a

Waffle House, Allene Hughes, who was driving a 2004 Kia Optima, turned onto

and traveled in the wrong direction on Club Drive, a one way street.  (Doc. No. 98)

Ms. Hughes then ran a red light at the intersection of Club Drive and Brainerd

Road and was struck on the driver's side by a Mack truck that was traveling

through the intersection.  (*Id.*)  After this side impact, the subject Kia traveled

through a BP station parking lot and into a Waffle House parking lot where it

struck two parked, unoccupied vehicles.  (*Id.*)  The Kia then struck a fence and

came to rest against the side of a house.  (*Id.*)  Ms. Hughes died from a brain injury

she sustained in the accident.  (Doc. No. 64-1, Plaintiff's Complaint for Damages;

*see also* Doc. No. 86-16, Expert Report of J. Burton at 3.)

Ms. Hughes' mother filed this lawsuit against defendants.  The Complaint

does not allege that any design or manufacturing defect in the car caused the

collision between the Optima and the Mack truck.  (*See generally* Doc. No. 64-1,

Plaintiff's Complaint for Damages.)  Instead, Plaintiff alleges that the subject

Optima was defective because it lacked an electrical cut-off inertia switch that

would have prevented the subsequent impacts. (Doc. No. 64-1, Plaintiff's Complaint for Damages at ¶ 10; *see also* Doc. No. 86-14, Expert Report of B. Bloch at 9.) Plaintiff's Complaint further alleges that the lack of the electrical cut-off inertia switch enhanced Ms. Hughes' injuries because she sustained her fatal brain injury during one of the subsequent impacts, and not the impact with the Mack truck. (Doc. No. 86-16, Expert Report of J. Burton at 9.)

The parties agree on the reconstruction of this accident and how this accident occurred. In fact, there is very little in dispute regarding the facts of the accident except for how Ms. Hughes sustained her fatal injury. Although Ms. Hughes' Kia was struck by a Mack truck with such force that the car experienced a lateral (side-to-side) change-in-velocity of approximately 37 miles per hour, plaintiff argues that Ms. Hughes did not sustain her fatal brain injury during this collision. (*See* Doc. No. 68, R. Cunningham Dep. at 69:14-70:10; and Doc. No. 86-16, Expert Report of J. Burton at 9-10.) Instead, Plaintiff argues that Ms. Hughes sustained her fatal injury during a later collision with a curb or a parked vehicle. (Doc. No. 86-16, Expert Report of J. Burton at 9-10.)

Despite the fact that this case involves a side impact, during their initial analysis of the case, none of Plaintiff's experts, including her accident reconstruction expert, calculated or considered the lateral (side-to-side) change-in-velocity the subject Kia underwent when the Mack truck slammed into it. (*See*

Doc. No. 67, J. Burton Dep. at 26:1-11; 26:22-25; 29:24-30:7; Doc. No. 68, R. Cunningham Dep. at 67:4-10; 67:25-68:15; 69:14-15; 70:4-10.)  Because Plaintiff's experts failed to conduct this analysis, counsel for Defendants asked Plaintiff's expert, Ralph Cunningham, to perform the calculation at his deposition. Using basic trigonometry, Mr. Cunningham was able to calculate this value.  (*See* Do. No. 68, R. Cunningham Dep. at 69:14-70:10.)  Plaintiff has never disputed that this 37 mph delta-v calculated by Mr. Cunningham was incorrect.

During the subsequent deposition of Plaintiff's injury causation expert,  Dr. Burton admitted that determining the velocity of the driver's door that was impacted by the Mack truck was a critical factor in his analysis.  (Doc. No. 67 at 27:9-17.)  When asked about this velocity, Dr. Burton testified that the velocity was approximately 12 mph based on Mr. Cunningham's  determination that the Mack truck had slowed to approximately 12 miles per hour immediately before impact.  (*Id.* at 27:18-28:3.)  When confronted with Mr. Cunningham's calculation of the lateral delta-v, Dr. Burton admitted that if the car underwent a lateral delta-v of approximately 37 mph, the driver's door would have moved at a speed in excess of 35 mph – not the 12 mph he had originally assumed.  (*Id.* at 33:2-18.)  Dr. Burton further admitted that if the driver's door had been traveling at a velocity in excess of 35 mph, a side impact of this magnitude could have caused Ms. Hughes' fatal brain injury.  (*Id.* at 43:2-16.)

6

Because Dr. Burton failed to analyze and evaluate the true extent of the subject Kia's side impact with the Mack truck and accurately assess the forces acting on Ms. Hughes at the time of the impact, Defendants filed a Motion to Exclude his injury causation opinions pursuant to Federal Rule of Evidence 702. Furthermore, because Dr. Burton could not rule out the impact with the Mack truck as the cause of Ms. Hughes' fatal injury – a necessary finding in this enhanced injury case – Defendants filed a Motion for Summary Judgment.

In response to Defendants' Motions, Plaintiff filed a supplemental report for Dr. Burton in which Dr. Burton disclosed new and previously undisclosed accident reconstruction opinions. Specifically, Dr. Burton opined, for the first time, that the collision between the Kia and the Mack truck was a "side-swipe" that could not have generated a 37 mph lateral change of velocity. (*See* Doc. No. 72.) Plaintiff also filed "additions" to Dr. Burton's deposition testimony that attempted to rewrite his testimony. (*See* Doc. No. 71.) Because Plaintiff's attempts to sandbag Defendants with new and untimely opinions after both a *Daubert* motion and Motion for Summary Judgment had been filed was extremely prejudicial to Defendants, Defendants moved to strike both of these filings. (*See* Doc. Nos. 89 & 90.)

The District Court properly granted both of these motions. Plaintiff has now appealed the District's Court Order granting Defendants' Motion for Summary

7

Judgment and Defendant's Motion to Exclude Dr. Burton's injury causation opinions. Plaintiff does not challenge the District Court's decision to grant Defendants' Motions to Strike Dr. Burton's supplemental report or the additions to his deposition testimony. As such, only Dr. Burton's opinions that were included in his original report and those explained during his deposition are at issue in this appeal.

## III.    STANDARDS OF REVIEW.

The exclusion or admission of expert testimony is reversible only for abuse of discretion. The appellate court should not reverse the exclusion of scientific, technical, or other testimony unless the ruling is "manifestly erroneous." *General Elec. Co. v. Joiner*, 522 U.S. 136, 142-43, 118 S. Ct. 512, 516 (1997); *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1554 (11th Cir. 1995) ("The admissibility of evidence is committed to the broad discretion of the district court, and the decision to exclude certain evidence will be reversed only upon a clear showing of abuse of discretion.").

Even if the exclusion results in summary judgment, the standard of review does not change. "This deferential standard is not relaxed even though a ruling on the admissibility of expert evidence may be outcome-determinative." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999). "Because of the painstaking analyses which district courts undertake in making these admissibility determinations, their efforts are well deserving of the deference that the Supreme Court has accorded through the abuse of discretion standard enunciated in *Joiner*." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999).

The standard of review for summary judgment is *de novo*. *See Fane v. Edenfield*, 945 F.2d 1514, 1516 (11th Cir. 1991), *aff'd*, 507 U.S. 761, 113 S. Ct. 1792 (1993). "This court reviews a district court's grant of summary judgment *de novo*, with all evidence and reasonable factual inferences viewed in the light most favorable to the nonmoving party." *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (citing *Hale v. Tallapoosa County*, 50 F.3d 1579, 1581 (11th Cir. 1995)). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A grant of summary judgment may be upheld on any basis supported by the record."

9

*Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1118 (11th Cir. 1993)).


## SUMMARY OF THE ARGUMENT

The district court properly excluded Plaintiff's expert's Joseph Burton's

injury causation opinions in this case.  Although Dr. Burton was evaluating the

injuries sustained by Ms. Hughes, a driver involved in a side impact crash with a

Mack truck, Dr. Burton failed to properly assess and evaluate the forces acting on

Ms. Hughes at the time of the accident.  Dr. Burton admits that one of the two most

critical determinations he has to make when evaluating side impacts is the velocity

of the intrusion of the driver's door that was impacted by the Mack truck.

However, despite this admission, Dr. Burton inexplicably considered only the

longitudinal (front-to-rear) change-in-velocity experienced by the driver's door,

and not the significantly higher lateral (side-to-side) change-in-velocity the driver's

door underwent.  This glaring hole in Dr. Burton's analysis is particularly

egregious here when he admits that the driver's door would move at a speed

similar to the speed of the force being applied to the door.

In addition to Dr. Burton's failure to properly assess the forces applied on

Ms. Hughes at the time of the accident, Dr. Burton also failed to perform a proper

differential etiology that would indicate the specific collision in which Ms. Hughes

sustained her fatal injury. Dr. Burton's failure to conduct such an analysis

provides an independent basis for this Court to affirm the District Court's ruling.

Finally, the District Court properly granted Defendants' Motion for

Summary Judgment and dismissed her claims with prejudice. Under Tennessee

law,[1] Plaintiff is required to prove that the alleged defect in the Kia was a cause-in-

fact of Ms. Hughes' fatal brain injury, or in other words, that Ms. Hughes sustained

her fatal brain injury after the initial impact with the Mack truck. Plaintiff has no

evidence that Ms. Hughes sustained her fatal injury after the initial impact. In fact,

Dr. Burton specifically admits that Ms. Hughes could have sustained her fatal

injury during this impact. Furthermore, not only has Plaintiff's expert failed to rule

out the initial impact as the source of Ms. Hughes' fatal injury, Plaintiff's expert

cannot show which subsequent impact, if any, ultimately caused the injury. Under

these circumstances, it is impossible for a jury to conclude that it is more likely

that not that Plaintiff sustained her fatal injury after the initial impact with the

---

[1] In a diversity action, a federal court must apply the conflict-of-laws rules of the
forum state in which it sits. *Morgan v. Mar-Bel, Inc.*, 614 F. Supp. 438, 441 (N.D.
Ga. 1985). Because the District Court sits in Georgia, Georgia conflict-of-laws
rules apply. Georgia applies the rule of *lex loci delicti* to determine the substantive
law governing tort cases. Under *lex loci delicti*, tort cases are governed by the
substantive law of the state where the tort was committed. *See Lloyd v. Prudential
Securities, Inc.*, 438 S.E.2d 703, 704 (Ga. Ct. App. 1993). Because the accident,
and thus the alleged tort, occurred in Tennessee, Tennessee law applies to
plaintiff's claims.

Mack truck.  Accordingly, the District Court's grant of summary judgment should be affirmed.

<div align="center"><u>**ARGUMENT AND CITATIONS OF AUTHORITY**</u></div>

**I.    The District Court Properly Excluded the Injury Causation Opinions of Dr. Joseph Burton**

**A. Dr. Burton's Testimony Was Properly Excluded Because He Failed to Reliably Employ His Own Methodology.**

Plaintiff completely ignores the very reason Dr. Burton's testimony was properly excluded by the District Court.  Plaintiff claims that the District Court committed reversible error because, in the context of a design defect case, "disagreement over which proven and reliable scientific method is more accurate to predict injury causation is not a lawful reason to exclude the opinion of an expert."  (*See* Appellant's Corrected Brief at 24.)  However, Plaintiff completely misstates the issue here.  There is no disagreement "over which proven and reliable scientific method is more accurate" – to the contrary, Dr. Burton's testimony was excluded because Dr. Burton failed to reliably employ his own methodology.  During his deposition, Dr. Burton admitted that to determine the mechanism of injury, he must assess the forces that were acting on Ms. Hughes during the accident, and that the intrusion and velocity of the part of the vehicle adjacent to the occupant – here the driver's side door – are the two critical factors in making that determination:

<div align="center">12</div>

> Q.    So for a side impact you said the two critical factors are the amount of intrusion experienced by the vehicle that's being struck; is that correct?
>
> A.    Yes, sir.
>
> Q.    And the velocity of the interior of the door that's being impacted in this case?
>
> A.    Or what part of the vehicle is adjacent to the occupant.  In this case it would be the door.

(Doc. No. 67, J. Burton Dep. (May 3, 2012) at 27:9-17 ; *see also* 12:15-13:16.)

Despite Dr. Burton's clear and unambiguous admission that the velocity of the interior of the door that is being impacted in the crash is a critical factor in his analysis, Dr. Burton blatantly ignored the true extent of the Mack truck's collision with the subject Kia Optima and failed to accurately assess the velocity of the interior of the driver's door during the collision.  In fact, although Dr. Burton was assessing the injuries caused by a side impact, he inexplicably considered only the change-in-velocity Ms. Hughes' Kia underwent in the longitudinal direction (front-to-back), and not the transverse direction (side-to-side) in his analysis:

> Q.    Let's focus in on the collision between the Mack truck and the Kia.  Tell me what you understand, just describe that collision between the Mack truck and the Kia.
>
> A.    That it resulted in a delta-v for the Kia of about I think 8 miles an hour, something like that.  The PDOF was 12 degrees forward of a 90-degree side impact according to Cunningham's report, which means it is coming a little bit -- if I'm facing north, it is coming a little bit from the northwest basically if we're looking at a compass.

13

       \*  \*  \*  \*

Q. That 8-mile-per-hour delta-v was in the longitudinal direction, correct?

A. Yes. And I don't think he gave one for the side delta-v, side collision . . .

       \*  \*  \*  \*

Q. Knowing the change in velocity from a lateral direction was not something you wanted to know as part of your analysis of injury causation in this case?

A. Not really. I would be more interested in the speed the vehicle was going when it made the contact and the amount of intrusion which I already knew to be approximately 20 inches at the hinge pillar.

(*Id.* at 26:1-11; 26:22-25; 29:24-30:7.) Because Dr. Burton ignored the change of velocity the subject Kia underwent in the transverse direction in the crash, Dr. Burton incorrectly assumed that the velocity of the driver's door in Ms. Hughes' Kia moved at approximately 12 miles an hour during the crash:

Q. Have you determined what the velocity of the driver's door in the Kia was in this case?

A. I think Cunningham's report says that the truck had slowed to something like 12 miles an hour, something like that. That means the front of the truck is moving at 12 miles an hour which means at some point in time the door panel or part of the Kia, its interior, will be moving at approximately 12 miles an hour also. So if that number I gave you is correct, that would be the velocity of some part of the Kia that's being impacted by the Mack truck.

14

(*Id.* at 27:18-28:3.)  When confronted with the transverse change of velocity, as calculated by Plaintiff's expert, Ralph Cunningham (whose opinions Dr. Burton admits that he relied upon), Dr. Burton admitted that the velocity of the Kia's door was at least 35 miles per hour – not the 12 miles an hour he originally assumed:

> Q.    What velocity based on your review of Mr. Cunningham's report had you concluded that the interior door was traveling as a result of the impact with the Mack truck?
>
> A.    I think I said about 15 minutes ago I assumed around 12 miles an hour.  If I assume hypothetically that it hit it at 38 miles an hour or 35, then at some point in time part of the interior structure of the Kia was moving at that speed.
>
> Q.    And so if the assumption you're making of Mr. Cunningham making that approximately 37-mile-per-hour delta-v is in fact true, you would not agree with me that at some point in that impact between the Kia and the Mack truck part of that driver's door was traveling at least 35 miles per hour.  Is that fair?
>
> A.    That's fair.

(*Id.* at 33:2-18.)  In short, because Dr. Burton failed to properly assess the true speed at which the driver's door was moving at the time of the accident – a critical factor in his analysis – Dr. Burton failed to reliably employ his own methodology while analyzing this case.

Plaintiff attempts to justify this glaring oversight in Dr. Burton's analysis by claiming that "for side impacts the delta-v is not the most important factor."  (*See* Plaintiff's Corrected Brief at 23.)  Although Dr. Burton claims that the delta-v is not the most important factor, he admits that the velocity of the door panel is one

of the two most critical pieces of information in his analysis. (Doc. No. 67, J. Burton Dep. at 27:9-17.) He further admits that the velocity of the door panel is directly correlated to the lateral delta-v. (*See id.* at 33:2-18, admitting that if the car experienced a lateral delta-v in excess of 37 mph, the driver's door would have been moving at least 35 mph).

Dr. Burton did not follow his own methodology in formulating his injury causation opinions, and therefore, his opinions were properly excluded. The cases cited by Plaintiff in support of her argument that the District Court erred, which she purports stand for the proposition that "so long as the methodologies that underlie an expert's opinion are **the product** of the application of reliable principles and methods, then, the expert's opinion is reliable," are not relevant because Dr. Burton failed to reliably follow his own methodology here. (*See* Plaintiff's Corrected Brief at 27 (emphasis in original).) Dr. Burtons' injury causation opinions are not the product of the application of reliable principles and methods, and these opinions were properly excluded.

### B. Dr. Burton's Testimony Was Properly Excluded Because He Failed to Conduct a Proper Differential Etiology.

Dr. Burton's methodology was improper because he did not undertake an appropriate differential etiology. Plaintiff claims that the District Court erred "by not allowing the jury to decide which injury causation theory to accept as

consistent with Allene's injuries," but she has misstated, or maybe even misunderstood, the Court's sound reasoning for excluding Dr. Burton's testimony.

The District Court excluded Dr. Burton's testimony because Dr. Burton did not perform a proper differential etiology to determine the cause of Ms. Hughes' fatal brain injury. Why did the District Court reach this conclusion? Because Dr. Burton could not rule out the initial impact with the Mack truck as the cause of Ms. Hughes' injury:

> Q.   But as I parse those words, you're not of the opinion that the impact between the Mack truck and the Kia in fact was the impact that was the cause of her fatal injury in this case?
>
> A.   **My opinion is that I don't know enough about the other impacts to exclude them.**  I know that I can stand up in this room, fall over backwards, and kill myself from hitting this cheap carpet I've got on the floor that's covering a concrete base.  I also know that I can go across a big pothole and slam my head into the steering wheel rim or the dash and get a fatal brain injury too.
>
>    **So I know those are all possibilities.  And did that happen here versus the Mack truck impact?  I don't know.**  I'm certainly not going to embarrass myself by arguing with somebody that the Mack truck impact couldn't produce a fatal injury because **I would look ridiculous and whatever credibility I might have to a jury or to a court I would lose if I tried to say that there's no way that that Mack truck impact could have killed this lady.  I wouldn't say that.**

(Doc. No. 67, J. Burton Dep. at 43:17-44:13 (emphasis added)).

In addition, Dr. Burton was unable to determine which of the other alleged impacts caused the injury:

17

Q.    So for all of the other impacts other than the Mack truck, you don't
have enough acceleration or deceleration information to make an
analysis with respect to those impacts and the likelihood that during
one of those impacts Ms. Hughes impacted some part of the Kia; is
that correct?

A.    Well, I know enough about curb impacts and things like that to know
that it has the potential to cause her injury and to have her impact a
structure from it.  **Did it and what structure was it, I don't have
enough information to answer that part of the equation.**

(*Id.* at 64:25-65:12 (emphasis added).)  Because Dr. Burton cannot rule out the

collision with the Mack truck as the cause of Ms. Hughes' fatal injury, he certainly

cannot reliably rule "in" any of the other impacts as the cause of her fatal injury.

Accordingly, because Dr. Burton did not perform a proper differential etiology to

determine the cause of Ms. Hughes' fatal injury, his opinions were properly

excluded.

Plaintiff attempts to divert the Court's attention away from Dr. Burton's

deficient methodology by citing to *Bauman v. Volkswagenwerk Aktiengesellschaft*,

621 F.2d 230 (6th Cir. 1980), and arguing that Defendants' expert did not explain

why Ms. Hughes did not have any noticeable injuries from contacting the Mack

truck during the initial collision – but this argument is irrelevant.  Defendants do

not have the burden of proof here – Plaintiff does.  Plaintiff has the burden of

proving that an alleged defect in the Kia enhanced her injuries beyond what she

would have sustained in the initial impact with the Mack truck.  *See Ellithorpe v.

Ford Motor Co.,* 503 S.W.2d 516, 522-23 (Tenn. 1973).  Plaintiff further attempts

18

to divert the Court's attention away from Dr. Burton's shortcomings by discussing her theories of defect. (*See* Plaintiff's Corrected Brief at 31.) Again, this is irrelevant to the issues on this appeal. Whether the car was equipped with an inertia switch has no bearing whatsoever on Dr. Burton's failure to conduct a proper differential etiology that would allow him to determine when the fatal injury occurred here.

Finally, in a last ditch attempt to salvage Dr. Burton's testimony, Plaintiff cites to *Christie v. Mazda Motor of America*, 2006 WL 2128897 (E.D. Tenn. 2006) and *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540 (6th Cir. 2004) and claims these cases stand for the proposition that her expert's testimony should not be excluded merely because an alternative cause of injury could exist and was not eliminated. These cases are distinguishable, however, because unlike the expert witnesses in the cases cited by Plaintiffs, Dr. Burton cannot rule out or rule in any of the impacts – including the initial impact with the Mack truck – as the cause of Ms. Hughes' fatal injury. (*See* Doc. No. 67 at 43:17-44:13; 64:25-65:12.)

In addition, when performing a proper differential etiology, an expert "must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation." *Hendrix v. Evenflo Co., Inc.*, 609

F.3d 1183, 1197 (11ᵗʰ Cir. 2010). Because Dr. Burton cannot rule out or rule in any of the impacts, he fails to follow a proper differential etiology

## II.     The Grant of Summary Judgment Was Proper Because Plaintiff Cannot Establish Causation

The District Court's decision to grant summary judgment for Defendants was proper because plaintiff has no evidence of causation. To prove causation under Tennessee law, Plaintiff has to show both "cause-in-fact" and "proximate cause." *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 705 (Tenn. 2011). Plaintiff's claim that she has evidence that will demonstrate that Ms. Hughes' fatal brain injury was caused "to some degree" by alleged defects in the subject Kia is insufficient as a matter of law.[2] Under Tennessee law, "[c]ause-in-fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss. Thus, cause-in-fact deals with the 'but for' consequence of an act. The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct." *Id.* at 686. Proximate cause is a determination that is made only after cause-in-fact has been established. *Id.*; see also *Bara v. Clarksville Memorial Hospital Sys., Inc.*, 104 S.W.3d 1(Tenn. Ct. App. 2002) ("Thus, proximate cause, or legal cause, concerns a determination of

---

[2] Indeed, the *O'Bryan* case cited by Plaintiff is decided under Kentucky, not Tennessee law. *See O'Bryan v. Volkswagen of Am.*, 39 F.3d 1182 (6th Cir. 1994).

whether legal liability should be imposed where cause in fact has been established.").

Here, because Plaintiff admits that the initial crash between the Kia and Mack truck was not caused by an alleged defect in the Kia, she must prove Ms. Hughes did not suffer her fatal brain injury during this crash. Plaintiff cannot make this showing because her only expert offering injury causation opinions in this case cannot rule out the impact with the Mack truck as the source of Ms. Hughes' fatal brain injury. To the contrary, Dr. Burton specifically testified that the initial impact with the Mack truck could have caused Ms. Hughes' fatal injury:

> Q.   If the delta-v in the impact between the Mack truck and the Kia in a lateral, or side to side, direction exceeded 35 miles per hour, you would agree that that's sufficient change in velocity acting upon the vehicle and then acting upon the driver of that vehicle to have caused a fatal brain injury?
>
> A.   I would agree that it could have caused a fatal brain injury.
>
> Q.   And would you hold that opinion to a reasonable degree of medical certainty?
>
> A.   As you worded your question and as I answered it, yes, sir, in that it has the potential at that speed to cause a fatal brain injury and could have caused a fatal brain injury.
>
> Q.   But as I parse those words, you're not of the opinion that the impact between the Mack truck and the Kia in fact was the impact that was the cause of her fatal injury in this case?
>
> A.   My opinion is that I don't know enough about the other impacts to exclude them. I know that I can stand up in this room, fall over backwards, and kill myself from hitting this cheap carpet I've got on the floor that's covering a concrete

21

base.  I also know that I can go across a big pothole and slam my head into the steering wheel rim or the dash and get a fatal brain injury too.  So I know those are all possibilities.  **And did that happen here versus the Mack truck impact?  I don't know.  I'm certainly not going to embarrass myself by arguing with somebody that the Mack truck impact couldn't produce a fatal injury because I would look ridiculous and whatever credibility I might have to a jury or to a court I would lose if I tried to say that there's no way that that Mack truck impact could have killed this lady.  I wouldn't say that.**

(Doc. No. 67, J. Burton Dep. at 43:2-44:13 (emphasis added).)

Under these circumstances, any attempt by Dr. Burton to opine that Ms. Hughes' injury was caused by an impact after the initial impact with the Mack truck would be nothing more than speculation or conjecture.  Even the cases cited by Plaintiff recognize that this is not sufficient to withstand summary judgment.  *See Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897, 901 (Tenn. Ct. App. 2001) ("The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.  A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.").  Even assuming that Plaintiff's litany of so-called "uncontroverted facts" are true, these "facts" are insufficient as a matter of law to withstand summary judgment because her expert admits that the initial impact with

22

the Mack truck could have caused Ms. Hughes' fatal injury here.  Under these

circumstances, Plaintiff cannot establish that any alleged defect in the subject Kia

was a cause-in-fact of Ms. Hughes' death because she could have sustained this

fatal injury from the initial impact.  Because Plaintiff has to establish both cause-

in-fact and proximate cause, Plaintiff's failure to establish cause-in-fact warrants

affirming the District Court's grant of summary judgment.

Even if this Court were to find, however, that Hughes' fatal injury occurred

after the initial impact, the District Court's grant of summary judgment is still

appropriate.  Plaintiff's Expert opines that Ms. Hughes "could have possibly

sustained the brain injury . . . as a result of her head's contact with the steering

wheel and/or instrument panel during the additional impacts the Kia experienced . .

.", but he admits that this is because the vehicle was no longer equipped with a

driver's front airbag:

> During these additional impacts, Ms. Hughes' body
> would have the opportunity to have interaction of her
> head with the steering wheel (**due to there being no
> airbag there to prevent interaction**) and the instrument
> panel in a manner which would either exacerbate or
> potentially cause her brain injury.

(Doc. No. 64-3, Expert Report of J. Burton at 8, 10 (emphasis added).)  It is

undisputed that the subject Kia was involved in a prior accident involving a frontal

collision that caused the driver's front airbag to deploy, and that the airbag was not

replaced following the accident.  (Doc. No., 67, J. Burton Dep. at 39:1-9).  Because

23

the Kia was not in the same condition as it was when it left Defendants'

possession, custody or control, Defendants cannot be liable for any injuries that

may have been caused by this modification.   Tenn. Code Ann. § 29-28-108 ("If a

product is not unreasonably dangerous at the time it leaves the control of the

manufacturer or seller but was made unreasonably dangerous by subsequent

unforeseeable alteration, change, improper maintenance or abnormal use, the

manufacturer or seller is not liable."); *see also* Doc. No. 67, J. Burton Dep. at

39:10-14 ("Q. And so you would agree that this Kia was not in substantially

similar condition with respect to the frontal part of the restraint system as it was

when it left the hands of Kia, correct?  A. I would agree.").

Plaintiff has provided no evidence whatsoever that a properly installed

driver frontal airbag would not have prevented Ms. Hughes' injuries in this case.

Plaintiff refers to a section of the Owner's Manual for the subject 2004 Kia Optima

regarding certain accidents in which a frontal airbag is not likely to deploy, but

Plaintiff has no expert testimony, or any other evidence, to show that those

conditions would have prevented the driver frontal airbag from deploying during

this crash or that the deployment of a properly installed frontal airbag would not

have prevented Ms. Hughes from sustaining a fatal brain injury.  Accordingly,

because of the modification to the vehicle, Defendants cannot be liable for

24

Plaintiff's injuries and the District Court's grant of summary judgment was appropriate.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the judgment of the District Court.

Respectfully submitted, this 4th day of June, 2013.

<div style="margin-left: 50%;">

/s/ Andrew T. Bayman
Andrew T. Bayman
Georgia Bar No. 043342
Franklin P. Brannen, Jr.
Georgia Bar No. 076432
Anneke J. Shepard
Georgia Bar No. 545247
KING & SPALDING
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309

COUNSEL FOR DEFENDANTS-
APPELLEES

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(C), I hereby certify the following:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5927 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Word 10 in fourteen-point Times New Roman font.

This 4th day of June, 2013.


/s/ Andrew T. Bayman
Andrew T. Bayman
Georgia Bar No. 043342
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-4600
abayman@kslaw.com

COUNSEL FOR DEFENDANT-
APPELLEES

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of June, 2013, I have electronically filed the foregoing ***Defendants-Appellees' Brief*** with the Clerk of the Court using the CM/ECF system, which I will automatically send e-mail notification of such filing to the following and I have served a copy via first class mail to the following:

**Mario Williams**
**David E. Betts**
Georgia Bar No.
Georgia Bar No. 055850
Betts & Associates
The Grant Building, Suite 200
44 Broad Street, NW
Atlanta, GA  30303
(404) 577-8888 (telephone)
(404) 577-0080 (facsimile)
mario@goodgeorgialawyer.com
davidbetts@bettslaw.net

**Edward T. M. Garland**
**David E. Tyszynski**
Georgia Bar No. 284900
Georgia Bar No. 720287
Garland, Samuel & Loeb, P.C.
3151 Maple Drive, N.E.
Atlanta, GA 30305
(404) 262-2225 (telephone)
(404) 365-5041 (facsimile)
etg@gsllaw.com
det@gsllaw.com

27

This 4th day of June, 2013.

/s/ Andrew T. Bayman
Andrew T. Bayman
Georgia Bar No. 043342
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-4600
abayman@kslaw.com

COUNSEL FOR DEFENDANT-
APPELLEES